**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
WAYCROSS DIVISION**

| | |
|---|---|
| GEORGE RICHARDS, | |
| Plaintiff, | CIVIL ACTION NO.: 5:18-cv-56 |
| v. | |
| EDWINA JOHNSON; WARDEN JAMES DEAL; and ROYCE PRATT, individually and in their official capacities, | |
| Defendants. | |

## ORDER AND MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff brought this 42 U.S.C. § 1983 action while incarcerated at Ware State Prison in Waycross, Georgia, to challenge certain conditions of his confinement.[1]  Doc. 1.  Plaintiff also filed a Motion for Leave to File an Amended Complaint, doc. 28, and a Motion for a Preliminary Injunction, doc. 25, which are currently before the Court.  For the reasons stated below, the Court **GRANTS** Plaintiff's Motion to Amend, doc. 28.[2]  I **RECOMMEND** the Court **DENY as moot** Plaintiff's Motion for a Preliminary Injunction, doc. 25.  Additionally, I **RECOMMEND** the Court **DISMISS without prejudice** Plaintiff's claims against Defendants Johnson, Deal, and Pratt.  However, I **FIND** that Plaintiff sets forth a non-frivolous retaliation claim against Defendant Paulk, and that claim shall proceed.  Consequently, a copy of Plaintiff's Complaint and attachments, docs. 1, 1-1, a copy of his Amended Complaint and attachments, docs. 28, 28-

---

[1]        Since filing his Complaint, Plaintiff has been released.  Doc. 29.

[2]        The Court **DIRECTS** the Clerk of Court to add Ms. Paulk as a Defendant in this action.

1, and a copy of this Order shall be served upon Defendant Paulk by the United States Marshal without prepayment of cost.

## BACKGROUND[3]

Plaintiff filed this action on July 5, 2018.  Doc. 1.  Plaintiff alleges that on June 5, 2018, a prison officer allowed him to use the phone to call his sister Stephanie.  Id. at 7–14.  Plaintiff was still on the phone when shift change occurred at 6:30 p.m.  Id.  Around 8:00 p.m., Defendants Johnson and Pratt and two other officers entered the K-1 building where Plaintiff was housed.  Id.  Defendant Johnson "abruptly and forcibl[y] snatch[ed]" the phone away from Plaintiff.  Id.  At that point, "the flap" came down and smashed Plaintiff's right hand.  Id.  The "flap" is a cast iron box on the door, and the lid of the box ("the flap") weighs about 20 to 30 pounds.  Id.  Plaintiff asked Defendant Johnson why she took the phone from him and slammed his hand in the flap.  Id.  Defendant Johnson replied, "I will do it again if you don't remove your hand."  Id.  Plaintiff asked for medical attention because his hand was swelling, and the pain made him "a little dizzy."  Id.  Prison officials did not immediately provide Plaintiff medical attention.  Id.

Later that night, Officer Little and Defendant Pratt returned to K-1.  Id.  Plaintiff asked Officer Little for two grievance forms and a medical form and stated he needed medical attention.  Id.  Defendant Pratt then approached Plaintiff's cell door and asked if Plaintiff was all right.  Id.  Plaintiff told Defendant Pratt that he was in "excruciating pain," that his hand had swollen up, and that he needed medical attention.  Id.  Defendant Pratt used a flashlight to examine Plaintiff's hand through the window and told Plaintiff he would call a nurse.  Id.  Plaintiff was taken to medical around 10:30 p.m.  Id.  Plaintiff told the nurse he was in pain and requested an ice pack.  Id.  However, the nurse informed Plaintiff that she could not give him

---

[3]     During frivolity review under 28 U.S.C. § 1915A, "[t]he complaint's factual allegations must be accepted as true."  Waldman v. Conway, 871 F.3d 1283, 1289 (11th Cir. 2017).

anything until after he saw a physician.  Id.  Defendant Pratt and other officers escorted Plaintiff back to his cell around 10:45 p.m.  Id.  At that time, Officer Little provided Plaintiff ice and grievance and medical forms.  Id.

In the early hours of June 6, 2018, Defendant Pratt returned to K-1 to provide Plaintiff with copies of two disciplinary reports issued against him.[4]  Id.; Doc. 1-1 at 9–10.  About 20 minutes later, Defendant Pratt brought Plaintiff a witness statement form.  Doc. 1 at 7–14; Doc. 1-1 at 11.  Plaintiff wrote a statement contesting the officers' version of events.  Doc. 1-1 at 11.  Plaintiff also asked Defendant Pratt for additional witness forms because "individuals in the dorm wanted to write what they witness[ed]."  Doc. 1 at 11–13.  Defendant Pratt told Plaintiff he only had one copy and that the copy machine was out of paper.  Id.  Plaintiff alleges that Defendants issued these disciplinary reports in a "deliberate and desperate attempt to cover their error."  Id.  He also contends that the timing of the disciplinary reports supports this claim as it "took five hours to write a D.R. for a[n] incident that occurred at . . . 8:00 p.m."  Id.

Plaintiff continued to advise prison staff of the severity of the pain and that he was "denied proper medical attention for two days" and did not receive any additional medical treatment until June 7, 2018 at around 8:00 a.m.  The nurse prescribed Plaintiff ibuprofen for swelling, determined that his hand was "badly bruised" but not broken or fractured, and told Plaintiff to notify medical if the swelling did not subside in a week, as nerve damage was possible.  Id. at 13–14.  He submitted a follow-up medical request on June 10, 2018.  Id.  A nurse

---

[4]     One disciplinary report alleges that Defendant Johnson instructed Plaintiff to release the phone and remove his hands from the flap and that Plaintiff complied but then "reached for [Defendant] Johnson as she stepped back."  Doc. 1-1 at 9.  The report states, "At no time was force used against the inmate." Id.  The second contends that Officer Little "gave a direct order to Inmate Richards . . . to return the phone and remove his hand from the flap" and that Plaintiff "refused to follow instructions."  Id. at 10. Both reports are dated July 6, 2018, and both are signed by Defendant Pratt and another official.  Id. at 9–10.

examined Plaintiff on June 11, 2018 and provided another week of ibuprofen for pain and discomfort.  Id.

On June 6, 2018, Plaintiff wrote Defendant Deal to inform him of the incident.  Id. at 13–14; Doc. 1-1 at 6.  Plaintiff also submitted a grievance form to Officer Clark that same day. Doc. 1 at 13–14; Doc. 1-1 at 6.  He received a receipt for this grievance.  Doc. 1 at 13–14; Doc. 1-1 at 13.  In his Complaint, Plaintiff writes that he "used the prison grievance procedure available a[t] Ware State Prison to try and solve the problem."  Doc. 1 at 3–4, 15.  However, Plaintiff "received no response."  Id.  He did not appeal the lack of response.

Plaintiff requests the following relief: (1) a declaratory judgment; (2) a preliminary and permanent injunction against Defendant Johnson; (3) $100,000 in compensatory damages; (4) $100,000 in punitive damages; (5) court costs; and (6) all other relief the Court deems just, proper, and equitable.  Id. at 17–18.

## STANDARD OF REVIEW

Plaintiff is bringing this action *in forma pauperis*.  Under 28 U.S.C. § 1915(a)(1), the Court may authorize the filing of a civil lawsuit without the prepayment of fees if the plaintiff submits an affidavit that includes a statement of all of his assets, shows an inability to pay the filing fee, and also includes a statement of the nature of the action which shows that he is entitled to redress.  Even if the plaintiff proves indigence, the Court must dismiss the action if it is frivolous, malicious, or if it fails to state a claim upon which relief may be granted.  28 U.S.C. §§ 1915(e)(2)(B)(i)–(ii).  Additionally, pursuant to 28 U.S.C. § 1915A, the Court must review a complaint in which a prisoner seeks redress from a governmental entity.  Upon such screening, the Court must dismiss a complaint, or any portion thereof, that is frivolous, malicious, fails to

state a claim upon which relief may be granted, or which seeks monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915A(b).

The Court looks to the instructions for pleadings contained in the Federal Rules of Civil Procedure when reviewing a complaint on an application to proceed *in forma pauperis*.  See Fed. R. Civ. P. 8 ("A pleading that states a claim for relief must contain [among other things] . . . a short and plain statement of the claim showing that the pleader is entitled to relief."); Fed. R. Civ. P. 10 (requiring that claims be set forth in numbered paragraphs, each limited to a single set of circumstances).  Further, a claim is frivolous under § 1915(e)(2)(B)(i) "if it is 'without arguable merit either in law or fact.'"  Napier v. Preslicka, 314 F.3d 528, 531 (11th Cir. 2002) (quoting Bilal v. Driver, 251 F.3d 1346, 1349 (11th Cir. 2001)).

Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6).  Thompson v. Rundle, 393 F. App'x 675, 678 (11th Cir. 2010).  Under that standard, this Court must determine whether the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  A plaintiff must assert "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not" suffice.  Twombly, 550 U.S. at 555.  Section 1915 also "accords judges not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless."  Bilal, 251 F.3d at 1349 (quoting Neitzke v. Williams, 490 U.S. 319, 327 (1989)).

In its analysis, the Court will abide by the long-standing principle that the pleadings of unrepresented parties are held to a less stringent standard than those drafted by attorneys and, therefore, must be liberally construed.  Haines v. Kerner, 404 U.S. 519, 520 (1972); Boxer X v. Harris, 437 F.3d 1107, 1110 (11th Cir. 2006) ("*Pro se* pleadings are held to a less stringent standard than pleadings drafted by attorneys . . . ." (emphasis omitted) (quoting Hughes v. Lott, 350 F.3d 1157, 1160 (11th Cir. 2003))).  However, Plaintiff's unrepresented status will not excuse mistakes regarding procedural rules.  McNeil v. United States, 508 U.S. 106, 113 (1993) ("We have never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel.").

## DISCUSSION

### I.   Plaintiff's Motion for Leave to file an Amended Complaint, doc. 28

On July 26, 2018, Plaintiff filed a motion requesting leave to file an amended complaint. Doc. 7.  In this motion, Plaintiff sought to add "Ms. Paulk," an employee at Ware State Prison. Id.  Plaintiff alleges that Ms. Paulk threatened him and retaliated against him for filing grievances and complaining about issues to the warden.  Id.; Doc. 8.  Specifically, Plaintiff alleges Ms. Paulk deprived him of his property by suspending his access to his GOAL Device (JP5) tablet for a manufactured reason, preventing him from receiving e-mail communications from his family.  Doc. 8; Doc. 25.  He also alleges that on June 6, 2018, after he e-mailed his sister requesting she call the prison to help him obtain medical treatment, his sister was "blocked" on the JP5 device.  Doc. 25 at 3.

On September 4, 2018, Plaintiff asked the Court to withdraw his request to amend and add Ms. Paulk as a Defendant until he could properly exhaust the prison's administrative

remedies.  Doc. 23.  The Court granted Plaintiff's request and terminated his motion to amend, doc. 7.  Doc. 24.

On March 11, 2019, Plaintiff resubmitted his Motion for Leave to file an Amended Complaint.  Doc. 28.  The Motion is substantively identical to his July 26, 2018 motion. Compare Doc. 7 with Doc. 28.  Plaintiff still seeks to add Ms. Paulk as a Defendant to this action and claims she retaliated against him.  Doc. 28.  Though he "had to withdraw my motion due to the lack" of exhaustion, he is resubmitting it now.  Doc. 28-1.

Litigants may amend a complaint without leave of court "once as a matter of course" under Rule 15(a)(1) of the Federal Rules of Civil Procedure.  Fed. R. Civ. P. 15(a)(1).  A pro se prisoner retains the right to amend as a matter of course "so long as no responsive pleading has been filed."  Toenniges v. Ga. Dep't of Corr., 502 F. App'x 888, 889 (11th Cir. 2012).  Once a party files an amendment as a matter of course or the time to amend as a matter of course expires, parties may only amend by obtaining written consent of the other party or by filing a motion requesting court permission to do so.  Fed. R. Civ. P. 15(a)(2).

Sometimes, however, litigants will request leave to amend from the Court while that litigant is still able to amend as a matter of course.  While a represented party "waives his right to amend his complaint as a matter of course when . . . counsel files an unnecessary motion for leave to amend," pro se litigants retain the right to amend as a matter of course even when leave of court is improperly requested.  Hoke v. Lyle, 716 F. App'x 930, 931 (11th Cir. 2018) ("[A] *pro se* plaintiff (unlike a counseled party) does not waive his right to amend as a matter of course by seeking the court's leave to amend."); Toenniges, 502 F. App'x at 889; Dollar v. Coweta Cty. Sheriff Office, 446 F. App'x 248, 249 n.1 (11th Cir. 2011); Brown v. Johnson, 387 F.3d 1344, 1348–49 (11th Cir. 2004).

Because Plaintiff's Complaint has not yet been served on any Defendant and no Defendant has filed a responsive pleading, Plaintiff retains the right to amend his Complaint once as a matter of course without permission from the Court.  Toenniges, 502 F. App'x at 890; Oliver v. Fuhrman, 695 F. App'x 436, 439 (11th Cir. 2017); see also Fed. R. Civ. P. 15(a)(1). However, within the time permitted to amend as a matter of course, Plaintiff submitted a motion to amend, withdrew the motion, and submitted a second, substantively identical motion to amend.  When Plaintiff filed his first motion to amend on July 26, 2018, he did not need Court permission to amend, nor did he waive his right to amend as a matter of course by seeking such leave.

Importantly, amendments made as a matter of course take effect upon filing, without any intervention from the court.  See Smothers v. Ditech Fin., LLC, No. 1:17-cv-4831, 2018 WL 3949715, at *1 (N.D. Ga. May 30, 2018); Moore v. Nationwide Advantage Mortg. Co., No. 1:16-cv-2757, 2016 WL 10998430, at *1 (N.D. Ga. Sept. 14, 2016); Blue Marine Shipping SA de CV v. Gulmar Offshore Middle E. LLC, No. 3:09-cv-555, 2010 WL 1687737, at *4 (N.D. Fla. Apr. 26, 2010) (noting that amendments as a matter of course "do not require a judicial imprimatur" and become the "operative complaint without judicial intervention" (quoting Connectu LLC v. Zuckerberg, 522 F.3d 82, 95–96 (1st Cir. 2008))).  Thus, if Plaintiff's July 26, 2018 motion effectively amended his Complaint when filed, Plaintiff cannot again amend as a matter of course.

The question, then, is when an amended complaint (which could have been properly filed under Rule 15(a)(1) but which was improperly filed by a pro se litigant along with a motion for leave to amend) takes effect and becomes operative.  In this circumstance, case law suggests that the amended complaint does not take effect until the court takes some type of action on the

pleading requesting leave.  See Toenniges, 502 F. App'x at 890 (noting that when a pro se

plaintiff "has the right to file an amended complaint as a matter of course, the district court *lacks

the discretion to reject the amended complaint* based on its alleged futility" and concluding that

the "court *should have allowed* [plaintiff] to amend his complaint" (emphasis added) (quoting

Williams v. Bd. of Regents of Univ. Sys. of Ga., 477 F.3d 1282, 1292 n.6 (11th Cir. 2007))).

When a pro se plaintiff can amend as a matter of course but improperly requests leave to

amend, this places a motion to amend before the court.  See, e.g., Doc. 28.  While courts lack

discretion to reject the amendment, the motion requests court action, nonetheless.  Indeed, courts

must take some sort of action to address the motion—including "granting leave" to amend,

deeming the complaint amended under Rule 15(a)(1), or making a finding that the amended

complaint is operative (either as of its filing date or as of the issuance of the court order).

Clayton v. Evans, No. 6:17-cv-158, 2019 WL 2067218, at *4 (S.D. Ga. May 10, 2019)

("Eleventh Circuit case law suggests that when a pro se plaintiff moves to amend instead of

amending as a matter of course, *courts should always grant leave to amend . . . .*" (emphasis

added)); Riley v. Warren, No. 4:17-CV-39, 2019 WL 1395911, at *2 (M.D. Ga. Mar. 8, 2019)

("[T]he Court considers Plaintiff's complaint to have been amended when he submitted his

motion to amend, which included the amended complaint, because no review of its merits was

necessary or even permitted before Plaintiff could amend his complaint . . . .").

This Court, as well as other courts, typically respond to this scenario by granting the

motion to amend.  Clayton, 2019 WL 2067218, at *4; Brown v. Bank of Am., No. 1:13-cv-4221,

2014 WL 12861718, at *1 (N.D. Ga. May 9, 2014) (granting Plaintiff's motion to amend while

noting "Plaintiffs may utilize their right to amend as a matter of course"); Wang v. Mortg. Elec.

Registration Sys., Inc., No. 1:11-cv-4381, 2012 WL 13014019, at *2 (N.D. Ga. Apr. 5, 2012)

(granting leave to amend when pro se plaintiffs attempted "to amend their Complaint during a time period when they had the right to file an amended complaint as a matter of course" and noting that "granting leave to amend is required under these circumstances").  Because court action is required, it follows that the amended complaint does not take effect until the Court addresses the procedural error and either grants leave to amend or issues an order deeming the complaint amended.

Plaintiff initially attempted to add Defendant Paulk to this action but voluntarily withdrew his motion before the Court ruled on it.[5]  Docs. 7, 23, 24.  Thus, the July 26 proposed amendment never took effect, and Plaintiff retained the right to amend his Complaint as a matter of course when he again requested leave to amend on March 11, 2019.  The Court, therefore, **GRANTS** Plaintiff's Motion for Leave to File an Amended Complaint, doc. 28, and deems the amendment effective as of the filing of the Amended Complaint.

## II.    Failure to Exhaust Administrative Remedies

### A.    Legal Requirements for Exhaustion

Under the Prison Litigation Reform Act ("PLRA"), an incarcerated individual must properly exhaust all available administrative remedies—the prison's internal grievance procedures—before filing a federal lawsuit to challenge prison conditions.[6]  42 U.S.C.

---

[5]    "Parties may be added or dropped when an amendment is made to a complaint as a matter of course." McLellan v. Miss. Power & Light Co., 526 F.2d 870 (5th Cir. 1976), *modified on other grounds*, 545 F.2d 919 (5th Cir. 1977); Henry v. Youngstown Buick/Pont/GMAC Truck Co., No. 1:11-cv-3464, 2012 WL 13009227, at *1 (N.D. Ga. May 30, 2012); Pretty Punch Shoppettes, Inc. v. Creative Wonders, Inc., 750 F. Supp. 487, 493 (M.D. Fla. 1990).

[6]    Though Plaintiff has since been released from prison, doc. 29, because he brought this action while incarcerated, he is still required to exhaust all administrative remedies.  See Napier v. Preslicka, 314 F.3d 528, 532 (11th Cir. 2002) ("[T]he PLRA applies to all cases *initiated* by a prisoner, without regard to whether that prisoner was released before the court considered the merits of his action." (citing Harris v. Garner, 216 F.3d 970, 974 (11th Cir. 2000))).

§ 1997e(c)(1); see Jones v. Bock, 549 U.S. 199, 202 (2007); Harris v. Garner, 216 F.3d 970, 974 (11th Cir. 2000).  Exhaustion is a mandatory requirement, and courts have no discretion to waive it or excuse it based on improper or imperfect attempts to exhaust, no matter how sympathetic the case or how special the circumstances.  Ross v. Blake, 136 S. Ct. 1850, 1857 (2016) (finding that the PLRA requires exhaustion "irrespective of any 'special circumstances'" and its "mandatory language means a court may not excuse a failure to exhaust, even to take such circumstances into account"); Jones, 549 U.S. at 211 ("There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court.").  Moreover, courts may not consider the adequacy or futility of the administrative remedies afforded to the inmate.  Higginbottom v. Carter, 223 F.3d 1259, 1261 (11th Cir. 2000).  Rather, courts may only determine whether administrative remedies are available and whether the inmate properly exhausted these remedies prior to filing suit.  Id.

Exhaustion must be proper, and proper exhaustion requires compliance with the prison's administrative policies, deadlines, and other critical procedural rules.  Woodford v. Ngo, 548 U.S. 81, 91–93 (2006); Bryant v. Rich, 530 F.3d 1368, 1378 (11th Cir. 2008) ("To exhaust administrative remedies in accordance with the PLRA, prisoners must 'properly take each step within the administrative process.'" (quoting Johnson v. Meadows, 418 F.3d 1152, 1157 (11th Cir. 2005))).  The prison's administrative grievance policies delineate what procedural steps prisoners must follow to fully exhaust.  Jones, 549 U.S. at 218; Bracero v. Sec'y, Fla. Dep't of Corr., No. 17-14278, 2018 WL 3861351, at *1 (11th Cir. Aug. 14, 2018) ("To satisfy the exhaustion requirement, a prisoner must complete the administrative process in accordance with the applicable grievance procedures established by the prison.").

Proper exhaustion requires prisoners do more than simply initiate a grievance; they must correctly follow all procedural rules set out in the institution's policy—including time limits—and must appeal any denial of relief through all levels of review that comprise the agency's administrative grievance process.  Johnson v. Meadows, 418 F.3d 1152, 1159 (11th Cir. 2005) ("Prisoners must timely meet the deadlines or the good cause standard of Georgia's administrative grievance procedures before filing a federal claim.").  However, "[p]roper exhaustion generally does not require that a prisoner resort to optional administrative procedures to address prison conditions."  Trevari v. Robert A. Deyton Det. Ctr., 729 F. App'x 748, 752 (11th Cir. 2018) (citing Dimanche v. Brown, 783 F.3d 1204, 1210 (11th Cir. 2015)).

Failure to exhaust administrative remedies is an affirmative defense, and inmates are not required to specially plead or demonstrate exhaustion in their complaint.  Jones, 549 U.S. at 216; Pearson v. Taylor, 665 F. App'x 858, 867 (11th Cir. 2016).  However, courts must dismiss complaints sua sponte "for failure to exhaust if the lack of exhaustion appears on the face of the complaint."  Burns v. Warden, USP Beaumont, 482 F. App'x 414, 416 (11th Cir. 2012) (quoting Bingham v. Thomas, 654 F.3d 1171, 1175 (11th Cir. 2011));  Okpala v. Drew, 248 F. App'x 72, 73 (11th Cir. 2007) ("When an affirmative defense appears on the face of a prisoner's complaint, thereby revealing that the prisoner cannot state a claim, the PLRA continues to require a district court to dismiss the complaint.").

**B.    The GDC's Administrative Grievance Policies**

The Georgia Department of Corrections' ("GDC") general grievance policies are set out in Standard Operating Procedure ("SOP") IIB05-0001.  Whatley v. Warden, Ware State Prison (Whatley I), 802 F.3d 1205, 1208 (11th Cir. 2015).  SOP IIB05-0001 contains the policy for general grievances, including grievances for excessive force and retaliation.  See Whatley v.

Smith (Whatley II), 898 F.3d 1072, 1074 (11th Cir. 2018) ("To exhaust administrative remedies under the Georgia Department of Corrections Standard Operating Procedures ("SOP"), inmates must follow the . . . prison grievance process outlined in SOP IIB05-0001.").

The grievance procedure outlined in SOP IIB05-0001 is a two-step process.  Malcolm v. Doe, No. 6:18-CV-24, 2018 WL 2108108, at *3 (S.D. Ga. Mar. 19, 2018); Shaw v. Toole, No. 6:14-CV-48, 2015 WL 4529817, at *5 (S.D. Ga. July 27, 2015).  To properly exhaust, incarcerated individuals must properly fulfill the requirements of both steps.  Johnson, 418 F.3d at 1157.  First, inmates must file a grievance within 10 days of becoming aware of the facts from which the grievance arises.  Whatley II, 898 F.3d at 1075; Clark v. Kilpatrick, No. 6:18-CV-68, 2019 WL 356807, at *3 (S.D. Ga. Jan. 29, 2019); Shaw, 2015 WL 4529817, at *5.  Once a grievance is accepted for processing, the warden has up to 40 days to review the grievance and determine whether to grant or deny it.  Shaw, 2015 WL 4529817, at *5.

If a grievance goes unanswered, the inmate is required to appeal the non-response after the warden's time to answer expires.  Id. ("An inmate can file an appeal with the Commissioner's Office in the following instances: if the grievance coordinator rejects his original grievance; after the warden responds to the original grievance; or when the time allowed for the warden's decision has expired."); see also, Whatley I, 802 F.3d at 1208 ("If the warden does not respond within forty days . . . the prisoner may appeal[.]"); Clark, 2019 WL 356807, at *3–4 ("Under GDC policy, if an incarcerated individual receives no response to a formal grievance, the proper remedy is to file an administrative appeal."); Malcolm, 2018 WL 2108108, at *3.

### C.   Claims Against Defendants Johnson, Deal, and Pratt

It is apparent from the face of Plaintiff's Complaint that Plaintiff did not exhaust his administrative remedies as to his claims against Defendants Johnson, Deal, and Pratt.  In his Complaint, Plaintiff writes that he did not receive a response to his grievance and admits that he did not appeal the lack of response.  Doc. 1 at 3–4; Clark, 2019 WL 356807, at *3–4 (dismissing for failure to exhaust administrative remedies when plaintiff filed a grievance but did not receive a response and plaintiff failed to appeal lack of response to his grievance); Malcolm, 2018 WL 2108108, at *4 ("It is apparent from the face of Plaintiff's Complaint that he did not exhaust his available administrative remedies prior to filing this lawsuit.  Plaintiff admits in his Complaint that he did not appeal his grievance even after the time for the warden to respond had expired.").

Moreover, Plaintiff submitted the grievance on June 6, 2018 and filed this action on July 5, 2018.  Thus, at the time Plaintiff filed this action, the warden's 40-day period to respond to Plaintiff's grievance had not yet expired.  Sewell v. Ramsey, No. 4:06-cv-159, 2007 WL 201269 (S.D. Ga. Jan. 27, 2007) (finding that a plaintiff who is still awaiting a response from the warden regarding his grievance is still in the process of exhausting his administrative remedies).  To properly exhaust, Plaintiff was required to wait 40 days to allow the warden time to respond.  If Plaintiff still had not received a response after those 40 days (or if his grievance was denied), Plaintiff then had to appeal the decision or lack of response.  Only after receiving a response to the appeal or after the applicable time-period for a response to the appeal expires has an inmate properly exhausted the grievance process.  See Okpala v. Drew, 248 F. App'x 72, 73 (11th Cir. 2007) (affirming *sua sponte* dismissal for failure to exhaust when a federal inmate submitted a written complaint and appealed the decision but filed his lawsuit before received the final decision on his appeal).  Plaintiff, in filing this action before the warden's 40-day period to

14

respond to his grievance had elapsed, failed to properly exhaust his administrative remedies as to his claims against Defendants Deal, Johnson, and Pratt.  Accordingly, I **RECOMMEND** the Court **DISMISS without prejudice** Plaintiff's claims against these three Defendants.

  **D.**  **Claim Against Defendant Paulk**

  Plaintiff writes that he had to first "withdraw [his] motion" to add Defendant Paulk because he had not yet exhausted all administrative remedies.  Doc. 28-1.  Notably, "the PLRA only require[s] Plaintiff to fully and properly exhaust [his] new claims prior to the time he filed the amended complaint that included the new claims." Romano v. Sec'y, DOC, No. 2:06-CV-375, 2011 WL 1790125, at *4 (M.D. Fla. May 10, 2011).  As discussed above, however, Plaintiff's first motion to amend never took effect (and Defendant Paulk was not added to this action) because Plaintiff withdrew his motion before the Court could address it.  Docs. 7, 23, 24. The Court has granted the Motion to Amend which Plaintiff filed, and Paulk is now a Defendant in this action.  Nothing on the face of Plaintiff's Amended Complaint, doc. 28, or attachments, doc. 28-1, shows Plaintiff failed to exhaust administrative remedies regarding his retaliation claim against Defendant Paulk before filing his Motion to Amend on March 11, 2019. Therefore, Plaintiff's retaliation claim will not be dismissed at this stage of litigation and will proceed.

**III.**  **Plaintiff's Retaliation Claim Against Paulk**

  The Court next examines whether Plaintiff pleads sufficient facts to create a non-frivolous retaliation claim against Defendant Paulk.  "It is an established principle of constitutional law that an inmate is considered to be exercising his First Amendment right of freedom of speech when he complains to the prison's administrators about the conditions of his confinement." O'Bryant v. Finch, 637 F.3d 1207, 1212 (11th Cir. 2011).  It is also established

that an inmate may maintain a cause of action against prison administrators who retaliate against him for making such complaints. Id. (quoting Smith v. Mosley, 532 F.3d 1270, 1276 (11th Cir. 2008) (internal citation and punctuation omitted)). "To establish a First Amendment retaliation claim, a prisoner need not allege the violation of an additional separate and distinct constitutional right; instead, the core of the claim is that the prisoner is being retaliated against for exercising his right to free speech." Id. "To prevail, the inmate must establish these elements: (1) his speech was constitutionally protected; (2) the inmate suffered adverse action such that the administrator's allegedly retaliatory conduct would likely deter a person of ordinary firmness from engaging in such speech; and (3) there is a causal relationship between the retaliatory action and the protected speech." Mosley, 532 F.3d at 1276 (citing Bennett v. Hendrix, 423 F.3d 1247, 1250, 1254 (11th Cir. 2005)).

Here, Plaintiff alleges Defendant Paulk retaliated against him for filing grievances, seeking help from his sister, and complaining to the warden about prison conditions. Docs. 8, 25, 28. "It is an established principle of constitutional law that an inmate is considered to be exercising his First Amendment right of freedom of speech when he complains to the prison's administrators about the conditions of his confinement." O'Bryant, 637 F.3d at 1212. Moreover, inmates have a constitutional right to bring and maintain a cause of action against prison administrators who retaliate against him for making such complaints. Id. (quoting Mosley, 532 F.3d at 1276).

Additionally, the retaliation Plaintiff asserts—including threats of disciplinary action, delaying his mail, transferring him to another institution, and depriving Plaintiff of his ability to use the GOAL Device (JP5) tablet without reason—constitutes a non-frivolous showing that a prisoner of "ordinary firmness" may have been deterred from exercising his First Amendment

16

rights based on the alleged actions of Defendant Paulk.  Doc. 8; Doc. 25; Doc. 25-1 at 2; Doc. 28 at 1–3; Bennett v. Hendrix, 423 F.3d 1247, 1250, 1254 (11th Cir. 2005) (observing that the "adverse effect" depends on the context of the alleged action and focuses on "the status of the speaker, the status of the retaliator, the relationship between the speaker and the retaliator, and the nature of the retaliatory acts" (citing Thaddeus-X v. Blatter, 175 F.3d 378, 398 (6th Cir. 1999))).  Thus, Plaintiff has alleged a non-frivolous First Amendment retaliation claim against Defendant Paulk.

**IV.    Plaintiff's Motion for a Preliminary Injunction**

In Plaintiff's Motion for a Preliminary Injunction, Plaintiff writes that he e-mailed his sister from his JP5 tablet on June 6, 2018 asking her to contact the prison to obtain medical attention for him.  Doc. 25 at 3.  However, after doing so, his sister was "rejected and block[ed]" from his e-mail account.  Plaintiff requests the Court order the prison to "unblock his sister and all other family members from [the] email list" on his JP5 GOAL device.  Id. at 5.

An inmate's claim for declaratory or injunctive relief regarding a condition of confinement is "subject to dismissal for mootness when that inmate is transferred to another prison and is no longer subject to the condition" for which the declaratory or injunctive relief is sought.  Govereh v. Johns, No. 5:17-CV-62, 2017 WL 4819385, at *2 n.1 (S.D. Ga. Oct. 25, 2017); see also Owens v. Sec'y, Fla. Dep't of Corr., 602 F. App'x 475, 476–77 (11th Cir. 2015); Cotterall v. Paul, 755 F.2d 777, 780 (11th Cir. 1985) (finding the mere possibility that plaintiff "might again be transferred" to the same institution is "too speculative" to avoid mootness); Smith v. Allen, 502 F.3d 1255, 1267 (2007) ("The general rule in [the Eleventh] [C]ircuit is that a transfer or a release of a prisoner from prison will moot that prisoner's claims for injunctive

and declaratory relief." (citing <u>McKinnon v. Talladega County</u>, 745 F.2d 1360, 1363 (11th Cir. 1984))).

In a letter dated April 22, 2019, Plaintiff informed the Court that he would be released from prison on April 25, 2019.  Doc. 29.  A search of Plaintiff's inmate number on the GDC website confirms that Plaintiff was released on April 25, 2019.  Moreover, the active address for Plaintiff on file with the Court is for a home in Brooklyn, New York, not a state jail address.  <u>See</u> <u>Perry v. Pope</u>, No. 5:10-CV-124, 2011 WL 4454144, at *1 (M.D. Ga. Sept. 26, 2011) (taking judicial notice of an inmate-plaintiff's release based on the release date listed on the GDC website and the address Plaintiff listed with the court).  Thus, the Court is convinced that Plaintiff has been released from prison, and his Motion for a Preliminary Injunction should be **DENIED as moot**.

## CONCLUSION

After due consideration, the Court **GRANTS** Plaintiff's Motion for Leave to File an Amended Complaint, doc. 28.  I **RECOMMEND** the Court **DENY as moot** his Motion for a Preliminary Injunction, doc. 25.  I also **RECOMMEND** the Court **DISMISS without prejudice** Plaintiff's claims against Defendants Johnson, Deal, and Pratt.  However, I **FIND** Plaintiff's retaliation claim against Defendant Paulk shall proceed.  A copy of Plaintiff's Complaint and attachments, docs. 1, 1-1, a copy of his Amended Complaint and attachments, docs. 28, 28-1, and a copy of this Order shall be served upon Defendant Paulk by the United States Marshal without prepayment of cost.

The Court **ORDERS** any party seeking to object to this Report and Recommendation to file specific written objections within 14 days of the date on which this Report and Recommendation is entered.  Any objections asserting that the Magistrate Judge failed to address

any contention raised in the Complaint must also be included.  Failure to do so will bar any later challenge or review of the factual findings or legal conclusions of the Magistrate Judge.  See 28 U.S.C. § 636(b)(1)(C); Thomas v. Arn, 474 U.S. 140 (1985).  A copy of the objections must be served upon all other parties to the action.

Upon receipt of Objections meeting the specificity requirement set out above, a United States District Judge will make a de novo determination of those portions of the report, proposed findings, or recommendation to which objection is made and may accept, reject, or modify in whole or in part, the findings or recommendations made by the Magistrate Judge.  Objections not meeting the specificity requirement set out above will not be considered by a District Judge.  A party may not appeal a Magistrate Judge's report and recommendation directly to the United States Court of Appeals for the Eleventh Circuit.  Appeals may be made only from a final judgment entered by or at the direction of a District Judge.

**The Court also provides the following instructions to the parties that will apply to the remainder of this action and which the Court urges the parties to read and follow.**

### INSTRUCTIONS TO DEFENDANT

Because Plaintiff is proceeding *in forma pauperis*, the undersigned directs that service be effected by the United States Marshal.  Fed. R. Civ. P. 4(c)(3).  In most cases, the marshal will first mail a copy of the complaint to defendant by first-class mail and request that defendant waive formal service of summons.  Fed. R. Civ. P. 4(d); Local R. 4.7.  Individual and corporate defendants have a duty to avoid unnecessary costs of serving the summons, and any such defendant who fails to comply with the request for waiver must bear the costs of personal service unless good cause can be shown for the failure to return the waiver.  Fed. R. Civ. P. 4(d)(2).

Generally, a defendant who timely returns the waiver is not required to answer the complaint until 60 days after the date that the marshal sent the request for waiver. Fed. R. Civ. P. 4(d)(3).

**IT IS FURTHER ORDERED** that Defendant is hereby granted leave of court to take the deposition of Plaintiff upon oral examination. Fed. R. Civ. P. 30(a)(2). Defendant is further advised that the Court's standard 140-day discovery period will commence upon the filing of the last answer. Local R. 26.1. Defendant shall ensure that all discovery, including Plaintiff's deposition and any other depositions in the case, is completed <u>within that discovery period</u>.

In the event that Defendant takes the deposition of any other person, Defendant is ordered to comply with the requirements of Federal Rule of Civil Procedure 30. As Plaintiff will likely not be in attendance for such a deposition, Defendant shall notify Plaintiff of the deposition and advise him that he may serve on Defendant, in a sealed envelope, within 10 days of the notice of deposition, written questions Plaintiff wishes to propound to the witness, if any. Defendant shall present such questions to the witness seriatim during the deposition. Fed. R. Civ. P. 30(c).

## <u>INSTRUCTIONS TO PLAINTIFF</u>

**IT IS FURTHER ORDERED** that Plaintiff shall serve upon Defendant or, if appearance has been entered by counsel, upon her attorney, a copy of every further pleading or other document submitted for consideration by the Court. Plaintiff shall include with the original paper to be filed with the Clerk of Court a certificate stating the date on which a true and correct copy of any document was mailed to Defendant or her counsel. Fed. R. Civ. P. 5. "Every pleading shall contain a caption setting forth the name of the court, the title of the action, [and] the file number." Fed. R. Civ. P. 10(a).

<u>Plaintiff is charged with the responsibility of **immediately** informing this Court and defense counsel of any change of address during the pendency of this action. Local R. 11.1.</u>

<u>Plaintiff's failure to notify the Court of a change in his address may result in dismissal of this case.</u>

Plaintiff has the responsibility for pursuing this case.  For example, if Plaintiff wishes to obtain facts and information about the case from Defendant, Plaintiff must initiate discovery. <u>See generally</u> Fed. R. Civ. P. 26 *et seq*.  The discovery period in this case will expire 140 days after the filing of the last answer.  Local R. 26.1.  Plaintiff does not need the permission of the Court to begin discovery, and Plaintiff should begin discovery promptly and complete it within this time period.  <u>Id.</u>  Discovery materials should **not** be filed routinely with the Clerk of Court; exceptions include: when the Court directs filing; when a party needs such materials in connection with a motion or response, and then only to the extent necessary; and when needed for use at trial.  Local R. 26.4.

Interrogatories are a practical method of discovery for incarcerated persons.  <u>See</u> Fed. R. Civ. P. 33.  Interrogatories may be served only on a <u>party</u> to the litigation, and, for the purposes of the instant case, this means that interrogatories should not be directed to persons or organizations who are not <u>named</u> as a defendant.  Interrogatories are not to contain more than 25 questions.  Fed. R. Civ. P. 33(a).  If Plaintiff wishes to propound more than 25 interrogatories to a party, Plaintiff must have permission of the Court.  If Plaintiff wishes to file a motion to compel, pursuant to Federal Rule of Civil Procedure 37, he should first contact the attorney for Defendant and try to work out the problem; if Plaintiff proceeds with the motion to compel, he should also file a statement certifying that he has contacted opposing counsel in a good faith effort to resolve any dispute about discovery.  Fed. R. Civ. P. 26(c), 37(a)(2)(A); Local R. 26.7.

Plaintiff has the responsibility for maintaining his own records of the case.  If Plaintiff loses papers and needs new copies, he may obtain them from the Clerk of Court at the standard

cost of fifty cents ($.50) per page.  **If Plaintiff seeks copies, he should request them directly from the Clerk of Court and is advised that the Court will authorize and require the collection of fees from his prison trust fund account to pay the cost of the copies at the aforementioned rate of fifty cents ($.50) per page.**

If Plaintiff does not press his case forward, the court may dismiss it for want of prosecution.  Fed. R. Civ. P. 41; Local R. 41.1.

It is Plaintiff's duty to cooperate fully in any discovery which Defendant may initiate. Upon no less than five days' notice of the scheduled deposition date, Plaintiff shall appear and permit his deposition to be taken and shall answer, under oath or solemn affirmation, any question which seeks information relevant to the subject matter of the pending action.  Failing to answer questions at the deposition or giving evasive or incomplete responses to questions will not be tolerated and may subject Plaintiff to severe sanctions, including dismissal of this case.

As the case progresses, Plaintiff may receive a notice addressed to "counsel of record" directing the parties to prepare and submit a Joint Status Report and a Proposed Pretrial Order. A plaintiff proceeding without counsel may prepare and file a unilateral Status Report and is required to prepare and file his own version of the Proposed Pretrial Order.  A plaintiff who is incarcerated shall not be required or entitled to attend any status or pretrial conference which may be scheduled by the Court.

## ADDITIONAL INSTRUCTIONS TO PLAINTIFF REGARDING MOTIONS TO DISMISS AND MOTIONS FOR SUMMARY JUDGMENT

Defendant may choose to ask the Court to dismiss this action by filing a motion to dismiss, a motion for summary judgment, or both.  Under this Court's Local Rules, a party opposing a motion to dismiss shall file and serve his response to the motion within 14 days of its service.  "Failure to respond shall indicate that there is no opposition to a motion."  Local R. 7.5.

Therefore, if Plaintiff fails to respond to a motion to dismiss, the Court will assume that he does not oppose Defendant's motion.  Plaintiff's case may be dismissed for lack of prosecution if Plaintiff fails to respond to a motion to dismiss.

Plaintiff's response to a motion for summary judgment must be filed within 21 days after service of the motion.  Local R. 7.5, 56.1.  The failure to respond to such a motion shall indicate that there is no opposition to the motion.  Furthermore, each material fact set forth in Defendant's statement of material facts will be deemed admitted unless specifically controverted by an opposition statement.  Should Defendant file a motion for summary judgment, Plaintiff is advised that he will have the burden of establishing the existence of a genuine dispute as to any material fact in this case.  That burden cannot be carried by reliance on the conclusory allegations contained within the complaint.  Should Defendant's motion for summary judgment be supported by affidavit, Plaintiff must file counter-affidavits if he desires to contest Defendant's statement of the facts.  Should Plaintiff fail to file opposing affidavits setting forth specific facts showing that there is a genuine dispute for trial, any factual assertions made in Defendant's affidavits will be accepted as true and summary judgment may be entered against Plaintiff pursuant to Federal Rule of Civil Procedure 56.

**SO ORDERED** and **REPORTED and RECOMMENDED**, this 8th day of July, 2019.


_____
BENJAMIN W. CHEESBRO
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA